UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| REBECCA MARTINEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:18 CV 220 |
| | ) |
| COLOPLAST CORP; COLOPLAST | ) |
| MANUFACTURING US, LLC, | ) |
| | ) |
| Defendants. | ) |

**OPINION and ORDER**

This matter is before the court on plaintiff's motion for partial summary judgment. (DE # 105.) For the reasons that follow, the motion will be denied.

**I.   BACKGROUND**

Plaintiff Rebecca Martinez filed her Second Amended Complaint against defendants Coloplast Corp. and Coloplast Manufacturing US, LLC (the first complaint to name these defendants) on December 11, 2018. (DE # 32.) Plaintiff alleges claims for negligence and strict liability against these defendants, related to defendants' manufacture and marketing of a pelvic mesh product implanted in plaintiff to treat her pelvic organ prolapse. (*Id.*) Defendants' answer to plaintiff's complaint contained the following affirmative defense: "Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitation, repose, or other periods of limitation applicable to the Plaintiff's claims." (DE # 42 at 37.)

The undisputed facts underlying plaintiff's claims are as follows. In March 2016, plaintiff's physician, Dr. Waran, implanted a Coloplast Restorelle Y mesh for pelvic

organ prolapse repair. (DE # 106 at 2.) Plaintiff also had a hysterectomy performed by Dr. Weiss on the same day. (DE # 106-1 at 2.) Prior to her surgery, Dr. Waran warned plaintiff that pain could be a potential risk of a surgical mesh implant, including pain with intercourse, thigh pain, and vaginal scarring. (DE # 110-6 at 4-5.)

In June 2016, plaintiff reported to Dr. Weiss that she was doing well overall, but she continued to have some pain in her lower abdomen, in the area around her bladder. (DE # 106-5.)

In October 2016, plaintiff told her primary care physician, Dr. Zimmerman, that she had experienced pelvic pain since her surgery. (DE # 110-3.) Dr. Zimmerman noted that plaintiff, "w[]orks as a waitress, fin[]ds since []surgery, low pelvic pulling pain limits her to working 15 hrs a week." (*Id.* at 2.) During her deposition, plaintiff confirmed that she had been experiencing this worsening "low pelvic pulling pain" since her implant surgery.

> Q. Had you been having that pain since the surgery?
>
> A. I just wasn't sure what was going on, but the pain never went away. It got worse and worse.

(DE # 110-4 at 4.)

In March 2017, plaintiff told her OB/GYN, Dr. Dedelow, that she began experiencing chronic back and pelvic pain beginning after her surgery. (DE # 110-1 at 2.) Plaintiff told Dr. Dedelow that, since the procedure, she has had persistent low back pain/buttock pain that shoots up her spine, and radiating pain down her legs. (*Id.*) She also described lower abdominal discomfort, pain during intercourse, and told Dr.

2

Dedelow that her partner feels like he is hitting something. (*Id.*) Dr. Dedelow told plaintiff that if there was an issue regarding the placement of the mesh, there was more likely to be "a focal type low back pain" and he would not anticipate the pain to radiate up plaintiff's spine and down her legs. (DE # 106-4 at 2.) Dr. Dedelow told plaintiff that he would review her chart and consider the possibility of the mesh placement being the source of her pain. (*Id.*) Two weeks later, Dr. Dedelow referred plaintiff to a tertiary care center for consideration of mesh removal. (*Id.* at 3.)

On April 4, 2017, Dr. Rosenzweig examined plaintiff for a "mechanical complication of genitourinary prosthetic device implant." (DE # 106-3 at 5.) Dr. Rosenzweig found "[w]added tender mesh at apex of vagina." (*Id.* at 6.) He reported that the onset of the complication of the implant was April 4, 2017. (*Id.* at 5.)

In May 2017, plaintiff told her sports medicine doctor, Dr. Mullaly, that she had been in pain since her surgery. (DE # 110-2 at 1.) In his medical notes, Dr. Mullaly noted, "[s]he has seen multiple doctors in the last year. She had a bladder mesh sling put in with complications 04/2016. She [complains of] lower back pain since the surgery." (*Id.*) Plaintiff reported that she had seen multiple doctors regarding the source of her pain and was looking for a second opinion. (*Id.*)

In June 2017, plaintiff told her implanting surgeon, Dr. Waran, that she had been experiencing chronic lower back, pelvic, and buttock pain, since the surgery. (DE # 110-5.) Plaintiff described pain causing discomfort with sitting, standing, and walking, since the surgery. (*Id.*) She also complained of pain during intercourse, describing a

3

poking/stabbing feeling. (*Id.*) Dr. Waran found no evidence of mesh complication and found that it was not likely that the mesh could be causing all of plaintiff's symptoms. (DE # 106-1 at 4.) Dr. Waran referred plaintiff to a specialist, Dr. Goldberg, for further evaluation. (*Id.*)

On August 16, 2017, Dr. Goldberg discussed the alleged mesh complication with plaintiff and discussed removing the mesh. (DE # 106-6 at 3.) On September 19, 2017, Dr. Goldberg removed the mesh. (DE # 106-2.)

Plaintiff now moves for summary judgment on defendants' affirmative defense that her claims are untimely. (DE # 105.) Plaintiff argues that the statute of limitations was triggered, at the earliest, on April 4, 2017, when Dr. Rosenzweig found wadded or bunched up mesh at the apex of plaintiff's vagina – the same Coloplast Restorelle mesh later partially removed in September 2017. (*Id.* at 1.) Plaintiff argues that, in light of this discovery date, plaintiff had until April 4, 2019, to file her complaint, and therefore her complaint was timely filed. (*Id.* at 1-2.) The motion is fully briefed and is ripe for resolution.

II.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In responding to a motion for summary judgment, the non-moving party must

identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Palmer v. Marion County*, 327 F.3d 588, 595 (7th Cir. 2003). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson*, 477 U.S. at 248; *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995).

### III. ANALYSIS

Plaintiff has moved for summary judgment on defendants' affirmative defense that her claims are untimely under Indiana law. (DE # 105.) Plaintiff argues that she had no reason to believe that she possibly had complications from the mesh before she first saw Dr. Rosenzweig in April 2017. (DE # 106 at 5.) Defendants argue that, given

5

plaintiff's repeated reports to her doctors that she had experienced persistent pain since the mesh was inserted, there is sufficient evidence from which a reasonable jury could determine that plaintiff knew, or should have known, of her claim before December 2016. (DE # 109 at 7.)

The Indiana Products Liability Act contains a statute of limitations and a statute of repose for product liability claims. Ind. Code § 34-20-3-1. The limitations period is two years from the date of accrual. Ind. Code § 34-20-3-1(b)(1). This two-year statute of limitations "applies in any product liability action in which the theory of liability is negligence or strict liability in tort[.]" *Id.* The repose period is ten years from the date the product at issue was first delivered to the initial user or consumer. Ind. Code § 34-20-3-1(b)(2). While defendants' affirmative defense mentions both the statute of limitations and the statute of repose, defendants presently only argue that plaintiff's claims are untimely under the statute of limitations.

Under Indiana law, the general rule is that a cause of action "accrues" when "'the plaintiff knew or should have discovered that she suffered an injury or impingement, and that it was caused by the product or act of another.'" *Degussa Corp. v. Mullens*, 744 N.E.2d 407, 410 (Ind. 2001) (quoting *Barnes v. A.H. Robins Co.*, 476 N.E.2d 84, 87–88 (Ind. 1985)). In determining the applicability of the discovery rule, Indiana courts consider "what the plaintiff should have uncovered in the exercise of ordinary diligence." *Nelson v. Sandoz Pharm. Corp.*, 288 F.3d 954, 966, n.11 (7th Cir. 2002). The pertinent question is whether the plaintiff "experienced symptoms that would cause a person of reasonable

6

diligence to take action that would lead to the discovery of his cause of action." *Morgan v. Columbus McKinnon Corp.*, 837 N.E.2d 546, 549 (Ind. Ct. App. 2005).

"[A] plaintiff need not know with certainty that malpractice caused his injury, to trigger the running of the statutory time period." *Degussa Corp.*, 744 N.E.2d at 411. "Events short of a doctor's diagnosis can provide a plaintiff with evidence of a reasonable possibility that another's act or product caused his injuries." *Evenson v. Osmose Wood Preserving Co. of Am., Inc.*, 899 F.2d 701, 705 (7th Cir. 1990); *see also Degussa Corp.*, 744 N.E.2d at 411. However, "a plaintiff's mere suspicion or speculation that another's product caused the injuries is insufficient to trigger the statute." *Degussa Corp.*, 744 N.E.2d at 411. Furthermore, "[o]nce a plaintiff's doctor expressly informs the plaintiff that there is a 'reasonable possibility, if not a probability' that an injury was caused by an act or product, then the statute of limitations begins to run and the issue may become a matter of law." *Id.* (internal citation omitted).

"As the Indiana courts recognize, the date upon which a plaintiff 'discovered facts which, in the exercise of ordinary diligence, should lead to the discovery of [causation] and resulting injury, is often a question of fact.'" *Nelson*, 288 F.3d at 966 (quoting *Van Dusen v. Stotts*, 712 N.E.2d 491, 499 (Ind. 1999)). Such is the case here.

After a thorough review of the parties' arguments and the record, the court concludes that the evidence, viewed in a light most favorable to defendant, reveals genuine issues of material fact. The parties genuinely dispute whether plaintiff knew, or should have discovered, that her symptoms were the result of the defendants' product.

There are disputed issues of fact regarding what plaintiff should have discovered during the exercise of reasonable diligence regarding the cause of her symptoms, and whether she did in fact exercise reasonable diligence. Defendants have produced sufficient evidence to preclude the entry of summary judgment against them on their affirmative defense that plaintiff's claims are untimely. *See Hall v. Ethicon, Inc.*, No. 3:20-CV-516-RLM-MGG, 2020 WL 6826489, at *4–5 (N.D. Ind. Nov. 20, 2020) (finding that a reasonable jury could determine that plaintiff did not know, and could not have been expected to discover, that she suffered an injury caused by pelvic mesh prior to her doctor's diagnosis that the mesh was defective, which was within the limitations period). Accordingly, plaintiff's motion for partial summary judgment will be denied.

IV. **CONCLUSION**

For these reasons, the court **DENIES** plaintiff Rebecca Martinez's motion for partial summary judgment. (DE # 105.) The court **ORDERS** the parties to file a joint status report regarding their willingness to engage in a settlement conference before a Magistrate Judge by **March 15, 2021**. A trial date will be set under a separate order.

**SO ORDERED.**

Date: March 1, 2021

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT