UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| REBECCA MARTINEZ, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COLOPLAST CORP. & COLOPLAST )<br>MANUFACTURING US, LLC, )<br>)<br>Defendants. ) | Case No. 2:18-cv-220 |

**OPINION AND ORDER**

This matter is before the court on the Motion to Exclude the Opinions and Testimony of Plaintiff's Expert Jerry G. Blaivas, M.D. [DE 178], filed by the defendants, Coloplast Corp. and Coloplast Manufacturing US, LLC, on September 30, 2021. For the following reasons, the Motion [DE 178] is **GRANTED**.

*Background*

Prior to 2016, the plaintiff, Rebecca Martinez, experienced a series of medical problems including multiple forms of pelvic organ prolapse (POP). After consulting with two gynecologists, Timothy Weiss and Andrew Waran, Martinez underwent surgery on March 17, 2016. Dr. Weiss performed a hysterectomy, and Dr. Waran implanted a surgical mesh manufactured by the defendants. During the same operation, Dr. Waran also implanted a sling manufactured by Ethicon to support her bladder.

The surgical mesh was made of polypropylene and had the product name of Restorelle Y. The Restorelle mesh was designated "Y" because of its shape. Because of multiple pregnancies and age, some of Martinez's internal organs were sagging and in need of additional support. The

three ends of the Y shaped mesh were sutured to different parts of the pelvic cavity and were intended to provide a sling-like support for the sagging organs.

Throughout the pleadings, the parties have drawn a distinction between a surgical mesh and a sling. Both are intended to correct POP problems in women. The Restorelle Y surgical mesh is designed to be attached to the woman's sacrum, to extend downward, and to be attached to the vagina. It is implanted under the woman's small bowel. The sling is implanted to provide support for the woman's bladder and is not attached to the surgical mesh. (See generally, *Daubert* Hearing, Ex. A).

Several months after the implantation, Martinez sought treatment for abdominal, vaginal, pelvic, back, and leg pain. Dr. Waran found that it was unlikely that the surgical mesh was causing the pain, but he referred her to a urogynecologist, Dr. Roger Goldberg, who agreed to perform a partial removal surgery. On September 19, 2017, Dr. Goldberg performed an exploratory laparotomy and partial excision of the mesh. The parties have used the term "explanted" to describe both the procedure and the portion of the mesh removed.

Martinez now complains that the surgical mesh was defective and has caused her additional problems. In particular, she contends that the polypropylene tends to shrink and harden in the woman's body and that this leads to inflammation, pressure on nerves, and other complications. The lawsuit raises both product liability and negligence claims.

Dr. Blaivas is a board-certified urologist who practices in New York and has had a distinguished medical career. He has been recognized by the Society of Urodynamics and Female Urology and was the founder and editor of a medical journal, *Neurourology* [1] *and*

---

[1] "Neurourology focuses on disorders of the bladder related to spinal injuries and neurological disorders, more commonly referred to as neurogenic bladder." *Neurourology*, PREMIER MEDICAL GROUP, www.premiermedicalhv.com/divisions/services/neurourology/ (last visited Jan. 13, 2022).

*Urodynamics* [2]. Dr. Blaivas has taught at a number of medical schools and has surgical privileges at hospitals in Boston and New York. He currently specializes in reconstructive pelvic surgery and treats women for complications caused by synthetic mesh slings.

The defendants acknowledge that Dr. Blaivas is a well-qualified urologist, but they contend that he has offered opinions beyond the area of his expertise. They argue that his area of practice and expertise is limited to sling implants for stress urinary incontinence and not POP. In fact, Dr. Blaivas never has implanted or explanted a surgical mesh manufactured by the defendants. Martinez has not disputed the defendants' representations concerning Dr. Blaivas' lack of practical experience with surgical mesh implants or their removal.

In her response, Martinez cites to articles that Dr. Blaivas has read on surgical meshes, including articles on erosion and other problems. Martinez contends that reliance on those articles qualifies Dr. Blaivas to testify concerning the problems with surgical meshes, their design, the dangers of polypropylene, and the inadequacies of the testing and warnings associated with Restorelle Y.

*Discussion*

In ***Daubert v. Merrell Dow Pharmaceuticals, Inc.***, 509 U.S. 579 (1993), the Supreme Court interpreted **Federal Rule of Evidence 702** and imposed a gatekeeping responsibility on district court judges when expert testimony is offered. ***Daubert*** involved scientific testimony, and the lower federal courts were divided on whether the ***Daubert*** interpretation of Rule 702 applied to all expert testimony. In ***Kumho Tire Co. v. Carmichael***, 526 U.S. 137 (1999), the Supreme Court held that the gatekeeping requirement applied to all proposed expert testimony.

---

[2] Urodynamics helps find the cause of problems related to urine leaks/controlling urine, bladder not emptying all the way, the need to go too often, the need to go suddenly, weak urine flow, urine flow stopping and starting, and getting urinary tract infections often. Urodynamics studies "test how well the bladder, sphincters, and urethra hold and release urine. These tests can show how well the bladder works and why there could be leaks or blockages." *What is Urodynamics*, Urology Care Foundation, www.urologyhealth.org/urology-a-z/u/urodynamics (last visited Jan. 13, 2022).

The final case in the so-called *Daubert* trilogy is ***General Electric Co. v. Joiner***, 522 U.S. 136 (1997).  In that case, the Supreme Court held that the abuse of discretion standard should be applied on appellate review.  All three cases discussed factors that the court should consider in evaluating proposed expert testimony.

> **Rule 702** provides:
>
> > A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > (b) the testimony is based on sufficient facts or data;
> > (c) the testimony is the product of reliable principles and methods; and
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

In its current version, Rule 702 attempts to codify the holdings of the *Daubert* trilogy.

Even when there is no dispute that the proposed witness is an expert, more is required before the opinion is admissible.  ***Daubert*** emphasized the need for expert testimony to meet the twin requirements of reliability and relevancy.  In evaluating the proposed testimony, courts also have referred to a "fit" and an "intellectual rigor" requirement. ***Kumho Tire Co.***, 526 U.S. 137, 152; ***Harman v. EBSCO Industries, Inc.***, 758 F.3d 810, 819 (7th Cir. 2014).

The "fit" requirement is met if there is a logical connection between the expertise of the witness, the proposed opinion, and the issues at trial. The "intellectual rigor" inquiry is satisfied if the expert has applied the same diligence to both the proposed court opinion and an opinion reached in his other professional endeavors. In ***Schultz v. AKZO Nobel Paints, LLC, et al.***, 721 F.3d 426 (7th Cir. 2013), the Seventh Circuit stated:

> Although [*Daubert*] places the judge in the role of the gatekeeper for expert testimony, the key to the gate is not the ultimate correctness of

>   the expert's conclusions. Instead, it is the soundness and care with which
>   the expert arrived at h[is] opinion …"
>
>   721 F.3d at 431.

See also **Kirk v. Clark Equipment Company**, 991 F.3d 865, 873 (7th Cir. 2021).

Finally, **Federal Rule of Evidence 104(a)** is the mechanism for resolving a *Daubert* challenge.  Under **Rule 104(a)**, the court may consider any evidence which is not privileged and resolve any factual disputes.  The court must determine whether the proponent of expert testimony has demonstrated by a preponderance of the evidence that the *Daubert* requirements have been met.

A *Daubert* hearing was conducted on January 4, 2022, relating to the challenge to the testimony of Dr. Michael Margolis, Martinez's specific causation expert.  After reviewing the pleadings, another hearing is not required for the instant challenge to Dr. Blaivas' proposed testimony.

Cases which present novel technical or scientific questions frequently are filed, and the courtroom must be receptive to credible efforts to solve those problems.  An expert in the filed should be permitted to do research and testing in an effort to find a plausible solution.  The court should be receptive to that opinion.  Another individual with impressive credentials in a different field also may do research and form an opinion at the request of a party to the litigation.  The court should view that opinion with skepticism.  Someone who attempts to expand his knowledge in a particular area should qualify as an expert under **Rule 702**. Someone who attempts to gain knowledge solely for the purpose of litigation should not be considered an expert for purposes of **Rule 702**.

Although the admissibility of expert testimony is governed by **Rule 702**, **Rule 803(18)** provides additional guidance:

5

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> ****
>
> A statement contained in a treatise, periodical, or pamphlet if:
> **(A)** the statement is called to the attention of an **expert** witness on cross-examination or relied on by the **expert** on direct examination; and
> **(B)** the publication is established as a reliable authority by the **expert's** admission or testimony, by another **expert's** testimony, or by judicial notice.
> If admitted, the statement may be read into evidence but not received as an exhibit. (Emphasis added).

Because **Rule 803(18)** is addressed to trial testimony, it must be assumed that the proposed expert referred to has met the requirements of **Rule 702** and is an expert on the subject matter of the publications.

There is a difference between an expert who relies on learned publications to support his opinion and someone who has based an opinion solely on the publications.

> The rule [803(18)] also requires that the publication must be called to the attention of an expert on cross-examination or relied upon by the expert in direct examination. This provision is designed to ensure that the materials are used only under the sponsorship of an expert who can assist that fact finder and explain how to apply the materials. (Footnotes omitted).

2 KENNETH S. BROUN ET AL., MCCORMICK ON EVIDENCE 585 (8th ed. 2020). In other words, someone who bases his opinion only on learned publications cannot be an expert in that field under **Rule 702**.

Dr. Blaivas undeniably is an expert on the subject of bladder and urinary problems in women, but his practice, as shown by the title of his journal, is limited in scope. The sling is designed to treat bladder-related problems, but the surgical mesh is prescribed for problems relating to other internal organs, including the reproductive system. No evidence has been presented that Dr. Blaivas either has treated or is qualified to address the surgical mesh problems. His claimed expertise is based solely on articles read for purposes of litigation.

6

The undisputed evidence is that Martinez had both a sling and a surgical mesh implanted for her POP problems. The defendants did not manufacture the sling, and it is not an issue in this case.[3] What Martinez is suggesting is that because Dr. Blaivas is an acknowledged expert for one of her medical problems, he can review literature and testify about all the problems at issue in this lawsuit. *Daubert* dictates otherwise.

The proposed testimony of Dr. Blaivas lacks the "fit" requirement of *Daubert* and **Rule 702**. There is no logical connection between his expertise, the issues in the case, and his opinions. Additionally, given the area of Dr. Blaivas' expertise, it is unlikely that he would have accepted Martinez as a patient in his private practice. In other words, it is doubtful that Dr. Blaivas would treat a patient based only on knowledge that he has gained from medical journals. Therefore, the "intellectual rigor" of his proposed trial testimony cannot be compared to conclusions he may have drawn in his other professional activities. Under all the circumstances, the opinions of Dr. Blaivas lack the reliability and relevancy required by *Daubert*.

For the foregoing reasons, the defendants' the Motion [DE 178] is **GRANTED.**

ENTERED this 4th day of February, 2022.

/s/ Andrew P. Rodovich
United States Magistrate Judge

---

[3] In fact, Dr. Margolis testified at the *Daubert* hearing that Martinez's urinary tract infections are not related to the surgical mesh.