UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| REBECCA MARTINEZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 2:18-cv-220 |
| | ) |
| COLOPLAST CORP. & COLOPLAST | ) |
| MANUFACTURING US, LLC, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

This matter is before the court on the Motion to Exclude the Testimony and Opinions of Michael Thomas Margolis, M.D. [DE 172], filed by the defendants, Coloplast Corp. and Coloplast Manufacturing US, LLC, on September 30, 2021. For the following reasons, the Motion [DE 172] is **GRANTED in part**.

*Background*

Prior to 2016, the plaintiff, Rebecca Martinez, experienced a series of medical problems including multiple forms of pelvic organ prolapse (POP). After consulting with two gynecologists, Timothy Weiss and Andrew Waran, Martinez underwent surgery on March 17, 2016. Dr. Weiss performed a hysterectomy, and Dr. Waran implanted a surgical mesh manufactured by the defendants.

The surgical mesh was made of polypropylene and had the product name of Restorelle Y. Because of multiple pregnancies and age, some of Martinez's internal organs were sagging and in need of additional support. The Restorelle mesh was designated "Y" because of its shape.

The three ends of the Y shaped mesh were sutured to different parts of the pelvic cavity and were intended to provide a sling-like support for various organs.

Several months after the implantation, Martinez sought treatment for abdominal, vaginal, pelvic, back, and leg pain.  Dr. Waran found that it was unlikely that the mesh device was causing the pain, but referred her to urogynecologist, Dr. Roger Goldberg, who agreed to perform a partial removal surgery. On September 19, 2017, Dr. Goldberg performed an exploratory laparotomy and partial excision of the mesh.

Martinez now complains that the surgical mesh was defective and has caused her additional problems.  In particular, she contends that the polypropylene tends to shrink and harden in the woman's body and that this leads to inflammation, pressure on nerves, and other complications.  The lawsuit raises both product liability and negligence claims.

Martinez has retained Michael Thomas Margolis, a urogynecologist, as an expert witness. Dr. Margolis has not examined Martinez, nor has he spoken to her, but he has examined her medical records which detail her medical problems from both before and after the surgeries. According to Dr. Margolis, Martinez's current medical complaints are different than the ones she experienced before the surgery and are related to the surgical implant.

There are other lawsuits pending around the country challenging the polypropylene surgical meshes.  The defendants have labeled Dr. Margolis as a "serial testifier for plaintiffs in surgical mesh litigation," and have raised a *Daubert* challenge to his testimony. [DE 173]. In particular, the defendants argue that some of his opinions are beyond the area of his expertise and that others are based on an unreliable methodology.

A *Daubert* hearing was conducted on January 4, 2022.  Dr. Margolis appeared by video and was questioned by the court and counsel.  Additional exhibits were offered by both parties.

The instant motion affects both the pending Motion for Summary Judgment [DE 163] and the trial currently scheduled for March 21, 2022.

*Discussion*

In ***Daubert v. Merrell Dow Pharmaceuticals, Inc.***, 509 U.S. 579 (1993), the Supreme Court interpreted Federal Rule of Evidence 702 and imposed a gatekeeping responsibility on district court judges when expert testimony is offered.  ***Daubert*** involved scientific testimony, and the lower federal courts were divided on whether the ***Daubert*** interpretation of Rule 702 applied to all expert testimony.  In ***Kumho Tire Co. v. Carmichael***, 526 U.S. 137 (1999), the Supreme Court held that the gatekeeping requirement applied to all proposed expert testimony. The final case in the so-called ***Daubert*** trilogy is ***General Electric Co. v. Joiner***, 522 U.S. 136 (1997).  In that case, the Supreme Court held that the abuse of discretion standard should be applied on appellate review.

**Rule 702** provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

In its current version, Rule 702 attempts to codify the holdings of the ***Daubert*** trilogy.

***Daubert*** emphasized the need for expert testimony to meet the twin requirements of reliability and relevancy.  In evaluating the proposed testimony, courts have referred to a "fit" and "intellectual rigor" requirement. ***Kumho Tire Co.***, 526 U.S. 137, 152; ***Harman v. EBSCO***

3

*Industries, Inc.*, 758 F.3d 810, 819 (7th Cir. 2014).  Even when there is no dispute that the proposed witness is an expert, more is required before the opinion is admissible.

The "fit" requirement is met if there is a valid connection between the expertise of the witness, the proposed opinion, and the issues at trial. The "intellectual rigor" inquiry is satisfied if the expert has applied the same standard to both the proposed court opinion and an opinion reached in his other professional endeavors.

Finally, Federal Rule of Evidence 104(a) is the mechanism for resolving a *Daubert* challenge.  Under **Rule 104(a)**, the court may consider any evidence which is not privileged and resolve any factual disputes.  The court must determine whether the proponent of expert testimony has demonstrated by a preponderance of the evidence that the *Daubert* requirement have been met.

In the instant motion, the defendants challenge the proposed testimony of Dr. Margolis for seven reasons.  The first three reasons deal with the defendants' claim that Dr. Margolis lacks the qualifications to testify as to Restorelle Y's alleged defectiveness. They argue that he is a urogynecologist and neither a biomaterials expert nor an implant design expert.  They also point out that nothing in his experience or training would qualify him to testify about the design or biomedical properties of Restorelle Y, leaving his opinions irrelevant and not based on reliable scientific methodology.

The fact that Dr. Margolis is not a biomaterials expert does not categorically disqualify him from testifying as to the alleged negative impacts of Restorelle Y.   Dr. Margolis has testified that he has engaged in surgically removing over 700 mesh devices, with less than 5% being manufactured by the defendants, from his patients over his decades long career.  This has allowed him to observe what he believes to be the negative effects mesh can have on the human

4

body. Some adverse effects are the contraction and shrinkage of the mesh once it is implanted in some women.

However, Dr. Margolis has not demonstrated that he has any training or experience that would allow him to reliably testify as to how the design of the Restorelle Y is defective, including *why* the design causes it to contract or shrink once implanted in some patients. Dr. Margolis admitted at the hearing that he is neither a biomaterial nor biomechanical expert and that he has not had any training in either field. He also stated that he never has viewed Restorelle Y under a microscope before it was implanted and could not remember whether he has done so once it was removed.

Next, the defendants argue that Dr. Margolis' specific causation opinions of Martinez's alleged injuries should be excluded because his opinions on her medical history are "fundamentally unreliable," he mischaracterizes her alleged injuries, and his "differential diagnosis" is unreliable as a matter of law.

The specific injuries that Martinez has alleged in this lawsuit involve lower back and pelvis pain, abdomen pain, pain during sex, urinary tract infections, and urinary incontinence. An overarching argument of the defendants is that Dr. Margolis has never examined or spoken to Martinez, making his specific causation opinions unreliable. The court views the lack of examination, as it relates to specific causation, as a credibility issue for the jury to decide. The fact that Dr. Margolis can adequately identify, through Martinez's medical records, the differences in her medical problems before she had the mesh implanted versus after, qualifies him to testify as to the specific causal connection between the implanted mesh and her alleged injuries. For example, Dr. Margolis explained at the hearing that Martinez's back pain prior to the surgery was the result of a bulging disk, whereas her back pain post-surgery was due to the

Restorelle Y being connected to her sacral vertebrae 1 nerve (S1).  Dr. Margolis also pointed out that the pain Martinez experienced during sex after the surgery was a much different, more excruciating pain than she had experienced prior to the surgery. Dr. Margolis stated that a CAT scan after surgery showed thickening of a portion of Martinez's small bowel which caused her current abdomen pain. He further testified that her abdomen pain prior to surgery was the result of gallbladder infection and removal, irritable bowel syndrome, and gastroesophageal reflux disease (GERD).

Dr. Margolis' specific causation testimony is limited to Martinez's alleged pain in her back, pelvis, abdomen, and pain during sex because he testified at the hearing that her urinary tract infections and urinary incontinence were problems before her surgery would continue indefinitely. Additionally, Dr. Margolis testified that Martinez's complaints regarding pain radiating to her legs was unrelated to the implant and that she no longer suffers from POP issues.

Lastly, related to the specific causation issues in this case, the parties repeatedly highlighted the difference in opinions between Dr. Goldberg and Dr. Margolis regarding whether the mesh implanted in Martinez eroded.  During his deposition, Dr. Goldberg testified that Martinez did not suffer a mesh erosion, but there is some dispute as to whether Dr. Goldberg's operative notes reflected that a mesh erosion did in fact occur.  Dr. Margolis testified that based on Martinez's medical records, a mesh erosion did occur. Dr. Margolis also relied on a photograph of the explanted mesh (Pl.'s Ex. H) to support his opinions.  The defendants argue that Dr. Margolis is not entitled to testify as to his opinions about the mesh erosion because he would be "mischaracterizing Dr. Goldberg's report" and testimony. The defendants are effectively asking the court to settle a fact dispute to find that Dr. Margolis' opinion of the mesh

erosion is wrong and that Dr. Goldberg's opinion is correct as a matter of law. The court cannot resolve a factual dispute, and it is up to the jury to determine which opinion is more credible.

The defendants' sixth and seventh arguments as to why Dr. Margolis' testimony should not be admissible deal with Martinez's failure to warn to claim. The defendants argue that Dr. Margolis is not qualified to testify as to the adequacy of the warnings accompanying Restorelle Y. As an initial matter, Martinez claimed in her brief and at the hearing that she "will not have [Dr.] Margolis opine about the adequacy of warnings from a regulatory perspective as he does not have the necessary qualification about familiarity with FDA labeling regulations," but that "experts with clinical experience such as [Dr.] Margolis[',] are allowed to testify to the risks of mesh complications experienced by [Martinez], and whether those risks appeared in the IFU."

In his deposition, Dr. Waran conceded that he did not review the warnings prior to conducting the implantation surgery. Given the fact that Dr. Waran did not rely on the warnings, and Martinez's position that Dr. Margolis is unqualified to testify about the adequacy of the warnings on from a regulatory perspective, the court finds that any testimony from Dr. Margolis related to the warnings would not be reliable or relevant.

Next, the defendants claim that Dr. Margolis is not qualified to testify about Martinez's alleged need for future medical care. During the hearing, Dr. Margolis testified that the problems were permanent, but he did not specify what future care Martinez would need. More importantly, without conducting a medical examination, Dr. Margolis cannot determine future medical care. This is particularly significant because Dr. Margolis is not in a position to accurately measure the effects that Martinez's mental health problems have on her alleged physical symptoms.

7

Finally, the defendants claim that Dr. Margolis should not be allowed to testify as to opinions not contained in his report. Martinez agrees and has stated that she would not elicit testimony beyond the bounds of his report. Therefore, the court does not find a need to address this issue.

Based on the findings above, the defendants' Motion [DE 172] is **GRANTED in part**. Dr. Margolis' testimony will be permitted on the following topics: Martinez's alleged pain in her back, pelvis, abdomen, and during sex, as well as his observations as to whether the polypropene meshes, in general, and the Restorelle Y implanted in Martinez, in particular, eroded.

ENTERED this 4th day of February, 2022.

/s/ Andrew P. Rodovich
United States Magistrate Judge